81 F.3d 173
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 SECRETARY OF LABOR, Mine Safety and Health Administration, Petitioner,
v.
FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION, Respondent.
WYOMING FUEL COMPANY, now known as Basin Resources, Inc.;
Earl White, employed by Basin Resources, Inc.,
Real Parties in Interest.
 No. 95-9527.
 United States Court of Appeals, Tenth Circuit.
 April 8, 1996.
 
 1
 Before BRORBY and BARRETT, Circuit Judges, and BRIMMER,** District Judge.
 
 ORDER AND JUDGMENT[1]
 
 2
 BRIMMER, District Judge.
 
 
 3
 After examining the briefs and administrative record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 4
 The Secretary of Labor, Mine Safety and Health Administration (MSHA) petitions for review of the Federal Mine Safety and Health Review Commission (Commission) decision affirming the decision of an administrative law judge (ALJ) that the mine operator's violation of 30 C.F.R. 75.316 (1991) was not the result of the operator's unwarrantable failure, and that the operator's vice president and general manager, Earl White, did not knowingly authorize, order, or carry out the violation. We affirm.
 
 
 5
 The Golden Eagle Mine is an underground coal mine in Weston, Colorado, which was purchased from Wyoming Fuel Company by the parent company of Basin Resources, Inc. During June 1991, the mine was experiencing methane liberation problems. On June 23, 1991, to address the problem, White decided to make a major change to the ventilation system, contrary to a ventilation plan then in effect for the mine. He did not seek prior approval from MSHA for the change, although he did notify MSHA the next morning of the change.
 
 
 6
 Section 75.316 provided that "[a] ventilation system and methane and dust control plan and revisions thereof suitable to the conditions and the mining system of the coal mine and approved by the Secretary shall be adopted by the operator." Basin was issued citations for violating 75.316 by not obtaining prior approval for the changes to the ventilation plan, and White was cited for knowingly authorizing the violation of the plan.
 
 
 7
 An ALJ found that Basin violated its ventilation plan and 75.316 by making an unauthorized major change to its ventilation system, but the violation was not the result of an unwarrantable failure to comply with the standard within the meaning of 30 U.S.C. 814(d)(1), and that White had not knowingly authorized, ordered, or carried out the violation within the meaning of 30 U.S.C. 820(c). Wyoming Fuel Co., 15 F.M.S.H.R.C.1968 (1993).
 
 
 8
 The parties filed cross-petitions for discretionary review. The Commission affirmed the findings that Basin violated 75.316, but that the violation did not result from an unwarrantable failure, and White did not knowingly authorize, order, or carry out the violation.[2] Wyoming Fuel Co., n/k/a Basin Resources, Inc., 16 F.M.S.H.R.C. 1618, 1628-30 (1994). Following remand and further proceedings before the Commission, the present proceeding was commenced.
 
 
 9
 The Commission's findings[3] are conclusive "if supported by substantial evidence on the record considered as a whole." 30 U.S.C. 816(a)(1). "[S]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951)(quotation omitted). We may not displace the agency's "choice between two fairly conflicting views, even though [we] would justifiably have made a different choice had the matter been before [us] de novo." Id. at 488. We do not reweigh the evidence, but merely determine whether there exists evidence to support the findings of fact. Hansen v. Director, OWCP, 984 F.2d 364, 368 (10th Cir.1993). Further, we do not upset the agency's credibility determinations absent extraordinary circumstances. NLRB v. U.S. Postal Serv., 906 F.2d 482, 486 (10th Cir.1990).
 
 
 10
 We first address the question of White's unwarrantable failure to comply within the meaning of 814(d)(1). Unwarrantable failure is "aggravated conduct constituting more than ordinary negligence." Cyprus Plateau Mining Corp., 16 F.M.S.H.R.C. 1610, 1615 (1994). It is characterized by conduct such as "reckless disregard," "intentional misconduct," "indifference," or a "serious lack of reasonable care." Id. (quotations omitted). Under this standard, an operator's belief that he is complying with regulations must be reasonable as well as in good faith. Id.
 
 
 11
 The Secretary argues the Commission erred by concluding the ALJ implicitly found White's belief he was complying with applicable regulations was reasonable. The Secretary relies on L & J Energy Co. v. Secretary of Labor, 57 F.3d 1086 (D.C.Cir.1995), which we find inapplicable. There the court held that the Secretary could not salvage an erroneous ALJ opinion by arguing that evidence on which the ALJ expressly declined to rely supported his findings. Id. at 1087. This is not the situation in the present case.
 
 
 12
 We agree that the ALJ implicitly found White's belief was reasonable. The ALJ found credible White's testimony that he saw nothing in 75.316 requiring he obtain MSHA approval before making the changes. The ALJ agreed that nothing in 75.316 required such approval. He also noted that another engineer at the mine shared the same belief about prior approval, and that the belief was consistent with White's previous experience. The ALJ further found that White felt he could have been cited for failing to correct the problems in the ventilation system, and referred to two recent decisions that supported White's concerns.
 
 
 13
 The next issue is whether the findings are supported by substantial evidence. Nothing in 75.316 expressly required prior approval. MSHA investigator William Denning testified that nothing in 75.316 provided any guidance as to what changes to ventilation plans required prior MSHA approval. Even counsel for the Secretary maintained at oral argument before the Commission that the regulation did not require prior approval. Substantial evidence supports the finding that it was reasonable for White to conclude the regulation's lack of a prohibition against unilateral changes to ventilation plans allowed him to make the changes.
 
 
 14
 The Secretary contends it was unreasonable for White to fail to review the ventilation plan before making the changes. This is premised on the assumption the ventilation plan required prior MSHA approval for any modifications to the plan. However, it was undisputed that this requirement appeared only in a cover letter dated November 15, 1990, which was not included in the file concerning ventilation that Basin obtained when it purchased the mine. Thus, even if White had consulted the ventilation plan at the point when he was contemplating making the changes, he would not have been alerted to any requirement for prior notification.
 
 
 15
 The Secretary further contends that White's belief he did not need prior MSHA approval was unreasonable because his deputies, David Huey and Steve Salazar, had warned him that MSHA approval was required. The ALJ credited Huey and Salazar's testimony, but noted that White's response to their comments was to request a copy of the MSHA regulations and ask to be shown where they provided that he was required to notify MSHA of the changes. White read 75.316 and found nothing prohibiting him from making the changes without first notifying MSHA. The Secretary argues that Huey and Salazar's warning should have alerted White that he needed to check the ventilation plan, but neither Huey nor Salazar made that suggestion and, as discussed above, the plan would not have informed him of the requirement for prior notification.
 
 
 16
 The Secretary argues the Commission's finding that White reasonably concluded 75.316 permitted unilateral changes is at odds with its earlier holding that it would be unreasonable to interpret that section to permit unilateral changes. We disagree. Although the Commission ultimately concluded that the correct construction of 75.316 would require prior approval, we do not think this necessarily precludes a finding that an operator could have reasonably believed 75.316 did not require prior approval.
 
 
 17
 The Secretary contends substantial evidence does not support the finding that White's belief he could have been cited for failing to correct problems in the ventilation system was reasonable. In determining that White's concerns were reasonable, the ALJ cited Bethenergy Mines, Inc., 15 F.M.S.H.R.C. 1200 (1993), and Energy West Mining Co., 15 F.M.S.H.R.C. 1185 (1993), for the proposition that insufficient air velocity violates the operator's ventilation plans. The Secretary does not address these decisions. Consequently, we find no basis for questioning the finding that White reasonably believed he could have been cited for failing to correct the problems.
 
 
 18
 The Secretary asks that we overturn the Commission's decision crediting White's denial that anyone from MSHA told him he needed prior approval, over MSHA Inspector Donald Jordan's testimony that he told White prior approval was required. No authority is cited for the proposition that the Commission's credibility determination is not entitled to weight because the Commission did not observe the witnesses testify. Further, we see no basis for questioning its reason for disregarding Jordan's testimony--that Jordan prefaced his testimony by stating "if I remember correctly." R. Vol. V, Tr. of May 26 & 27 and June 21, 1993, hearing at 53.
 
 
 19
 The Secretary contends the Commission ignored evidence that the ventilation plan was designed to address the mine's methane problems, which included an explosion in March 1991 caused by a unilateral change in the ventilation system. This evidence is urged as support for the proposition that White was unreasonable in failing to consult the ventilation plan prior to making the changes, a contention we have already addressed.
 
 
 20
 The Secretary argues the ALJ's determination crediting White's testimony that he believed he was permitted to make unilateral changes is not entitled to acceptance because the ALJ gave no reason for making that determination. We disagree. The ALJ stated he credited White's testimony because White's belief was based on the language of 75.316, as well as his previous experience.
 
 
 21
 The Secretary faults the Commission for failing to address Salazar's testimony that White stated he "was in charge of the operation, not MSHA, and that he was going to run the operation," R. Vol. V, Tr. of May 26 & 27 and June 21, 1993, hearing at 64, and Huey's testimony that White stated "it was his mine and he didn't have to have MSHA's approval to change his air. There was nothing in the law that indicated that," id. at 82. As the ALJ found, these comments were made after White asked his deputies to show him where in the regulations he was required to obtain prior approval, and after reading 75.316 and finding no such requirement. While the Commission did not specifically address this testimony, the Secretary did not bring it to the Commission's attention, and presents no extraordinary circumstances excusing such failure. We therefore do not consider it. 30 U.S.C. 816(a)(1)("No objection that has not been urged before the Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.").
 
 
 22
 Finally, the Secretary challenges the finding that White did not knowingly authorize, order, or carry out the violation. The Secretary argues that we should reverse this finding because it is based on the Commission's erroneous unwarrantable failure analysis. Having concluded the Commission's unwarrantable failure analysis is not erroneous, we reject this argument as well.
 
 
 23
 AFFIRMED.
 
 
 
 **
 Honorable Clarence A. Brimmer, District Judge, United States District Court for the District of Wyoming, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3
 
 
 [2]
 Chairman Jordan dissented from the affirmance of the findings that the unauthorized change to the ventilation plan was not the result of White's unwarrantable failure to comply with 75.316, and that White did not knowingly authorize, order, or carry out the violation
 
 
 [3]
 The Commission does not have authority to make independent findings, only to consider whether the ALJ's findings are supported by substantial evidence. Donovan ex rel. Chacon v. Phelps Dodge Corp., 709 F.2d 86, 91 (D.C.Cir.1983)